FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 05, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JEFFREY A. UTTECHT, Superintendent of Coyote Ridge Corrections Center of The Washington Department of Corrections, in his individual and official capacities; and JOHN D. TURNER, Mailroom Sergeant of Coyote Ridge Corrections Center, in his individual and official capacities,<br><br>　　　　　Defendants. | NO: 4:21-CV-5047-TOR<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

BEFORE THE COURT are Defendants' Renewed Motion for Summary Judgment, ECF No. 95, and Plaintiff's Amended Motion for Summary Judgment and Permanent Injunction, ECF No. 97. These matters were considered with oral argument held on April 3, 2024. The Court has reviewed the record and files herein and is fully informed.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 1

For the reasons discussed below, Defendants' Renewed Motion for Summary Judgment is granted, Plaintiff's Amended Motion for Summary Judgment and Permanent Injunction is denied.

## BACKGROUND

On November 2, 2023, the Ninth Circuit reversed and remanded this case so the following issues could be resolved:

1. We reverse the order granting summary judgment to Defendants for damages from Policy # 1 and remand for the district court to consider the merits in the first instance.

2. We reverse the order dismissing claims related to Policy # 2 and remand for the district court to address HRDC's claims that Policy # 2 both facially and as applied violates the First Amendment, and whether HRDC meets the requirements for injunctive relief.

3. We vacate the district court's order on [the issue of delivery delays] and remand for the district court to assess if the delivery delays due to the initial content-based rejection were First Amendment violations, and if Turner can be individually liable.

4. We vacate the district court's order on [the due process claim] and remand for the district court to address if it would be "unduly burdensome" to require the Publication Review Committee to notify HRDC of its final decision.

5. We vacate the district court's order dismissing the claims against Uttecht and remand for the district court to assess his individual liability and defenses.

The parties are familiar with the facts of the case and have filed statements of fact not in dispute and disputed facts. ECF Nos. 96, 98, 103, and 104. There are only two Defendants in this action, Jeffrey A. Uttecht, former Superintendent of

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 2

Coyote Ridge Corrections Center, and John D. Turner, Mailroom Sergeant of Coyote Ridge Corrections Center.  Neither the Department of Corrections (DOC) nor Coyote Ridge Corrections Center (CRCC) are named as Defendants.

**A. Motion for Summary Judgment Standard Legal Standards**

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id*. at 248.  Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id*.  The Court views the facts, and all rational

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 3

inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no *respondeat superior* liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). A supervisor may be liable if they create, promulgate, implement, or otherwise possess responsibility for the operation of the policy that "'subjects, or causes [a plaintiff] to be subjected' to the deprivation of any rights secured by the Constitution." *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012) (internal citation omitted).

**1. Whether damages are owed for implementation of Policy # 1.**

The Parties are in agreement that Jeffery Uttecht was the Superintendent of CRCC from 2008 until he was promoted to Deputy Assistant Secretary of Prisons, East Command, on September 1, 2021. ECF No. 96 at ¶ 42. DOC Headquarters was responsible for creating departmental policy, not Superintendent Uttecht. At the facility level, Uttecht was responsible for creating operational memoranda, not

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 4

1  policies. *Id*. at ¶ 43.  While Uttecht issued a memorandum in 2018, it incorporated
2  DOC Headquarters policy directive.  *See* ECF No. 27-22.  The parties refer to
3  Policy # 1 as contained in CRCC 590.500(III)(A)(2), which provides: "Individuals
4  will not possess case law documents, including discovery material, unless
5  approved by the Superintendent/ Associate Superintendent of Programs."  *See id.*
6  Otherwise, Uttecht was not personally involved in the initial denial of allowing
7  The Habeas Citebook to be delivered to prisoners, nor was he involved in the
8  Publication Review Committee's later decision to allow the book to be delivered.
9  Plaintiff has come forward with no evidence of Uttecht's personal involvement.
10 Plaintiff cites to some signatures of others on certain documents but does not
11 establish Uttecht's personal involvement, whatsoever.  Even if the signatures made
12 on Uttecht's behalf constituted notice, "the denial of administrative grievances or
13 the failure to act" is insufficient for a supervisor to be liable under § 1983.
14 *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1157 (E.D. Wash. 2014) ("there must
15 be active unconstitutional behavior").  On this record, the Court finds Uttecht did
16 not "personally participate" in the alleged constitutional violations under these
17 circumstances.  *Jones*, 297 F.3d at 934.  In any event, there was an administrative
18 appeal and The Habeas Citebook was allowed to be delivered.  Delay is allowed
19 while the material is being reviewed.
20         John Turner was the mailroom sergeant at CRCC in 2020.  ECF No. 96, ¶

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 5

20. On April 23, 2020, a CRCC mailroom employee issued a mail rejection of The Habeas Citebook sent to an incarcerated individual, citing that the book contains case law. *Id*. at ¶ 18. On May 21, 2020, Plaintiff appealed the rejection after receiving the rejection notice. *Id*. at ¶¶ 19 and 21. Turner denied the appeal on the grounds it was not received within 20 days as required by DOC Policy 450.100. *Id*. at ¶ 22. Plaintiff disputes that an appeal was required per DOC Policy 450.100 and that the publication should have been sent to the Publication Review Committee. ECF No. 104 at ¶ 22. Between June 10 and June 15, 2020, Plaintiff mailed 15 copies of The Habeas Citebook to various incarcerated individuals at CRCC. ECF No. 96 at ¶ 23. The mailroom employees rejected the delivery of The Habeas Citebook to prisoners based on the DOC policy. Eventually, about 2-months after the first book arrived, Turner sent the book to the Publication Review Committee for a decision. *Id*. at ¶ 31. On July 13, 2020, the Publication Review Committee overturned the mailroom's rejections and found that the book did not violate policy. *Id*. at ¶ 37. After receiving this decision, Turner placed all books in the mailbag for delivery to the intended recipients. *Id*. at ¶ 38. Plaintiff disputes this occurred, but presents no evidence, other than speculation that Turner did not place all the books in the mailbag for delivery. In any event, the temporary delay in the delivery of a publication that is a result of the prison's security inspection is not a First Amendment violation. *Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 6

1999). Plaintiff cites no case law providing for damages for a temporary delay in the delivery of a publication. No case law defines how many days constitutes a temporary delay, so Turner did not have notice that this would develop into a Constitutional violation.

Plaintiff's speculation that Uttecht was personally involved, and that Turner is responsible for any delay are just that, speculation.

Based on pure speculation neither Defendant is liable for damages for implementing Policy # 1. Moreover, the temporary delay of a publication is not a First Amendment violation and the publication was sent for delivery.

**2. Whether Policy # 2 both facially and as applied violates the First Amendment, and whether HRDC meets the requirements for injunctive relief.**

To obtain a permanent or final injunction, a plaintiff must demonstrate: "(1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction." *Indep. Training & Apprenticeship Program v. California Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013).

The parties refer to Policy # 2 as contained in CRCC 590.500(III)(A)(3) which provides: "Individuals will not possess legal materials (e.g., case law, legal documents) containing information about another incarcerated Washington State

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 7

1  incarcerated individual." See ECF No. 27-22. The current version of this policy
2  does not allow incarcerated individuals to receive information in the mail related to
3  another Washington State incarcerated individual without prior approval from the
4  Superintendent. ECF No. 96, ¶ 56. Plaintiff does not dispute that the DOC no
5  longer has a complete prohibition on all case law. ECF No. 104, ¶ 56. Plaintiff
6  disputes that prisoners can obtain Washington case law with prior approval from
7  the Superintendent. *Id*. However, incarcerated individuals are able to access case
8  law through the prison law library. ECF No. 96, ¶ 57. Plaintiff complains that
9  incarcerated individuals have "limited access to case law" in the library. ECF No.
10 104, ¶ 57. However, limited access to the library does not constitute a
11 Constitutional violation because the material is accessible.

12    The DOC has expressed its penological reasons for keeping certain
13 documents out of jail cells and only allowing prisoners to access case law in the
14 law library. Neither Turner nor Uttecht must articulate the penological reasons
15 because the DOC as an agency has implemented these policies. The Court takes
16 judicial notice that the DOC's concerns are real. See *Lee v. City of Los Angeles*,
17 250 F.3d 668, 689 (9th Cir. 2001) (the court may take judicial notice of facts not
18 subject to reasonable dispute).

19    In any event, this Court has jurisdiction over Uttecht and Turner only.
20 Uttecht is no longer the Superintendent of CRCC. Injunctive relief against him is

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 8

meaningless at this time. Turner is the sergeant of the mail room and must follow the directives of his superiors and DOC. An injunction against the sergeant of the mail room does not remedy the allegations made by Plaintiff. In any event, there is a process for administratively appealing the denial of certain case law to prisoners. Plaintiff has not shown that an injunction is appropriate under these circumstances.

Moreover, the Prison Litigation Reform Act provides:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). Because the Court must give substantial weight to any adverse impact on public safety (prisoner safety), an injunction only against Sergeant Turner is not warranted.

> **3. Whether delivery delays due to the initial content-based rejection were First Amendment violations, and if Turner can be individually liable.**

As discussed in issue number 1, above, Plaintiff has not shown that Turner is personally responsible for the delivery delays, and the temporary delay of a publication is not a First Amendment violation. No damages can be awarded.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 9

**4. Whether it would be "unduly burdensome" to require the Publication Review Committee to notify HRDC of its final decision.**

Neither the DOC, nor CRCC, nor the Publication Review Committee are named Defendants to this case. This Court has jurisdiction over Uttecht and Turner, neither of whom controls the Publication Review Committee. Whether or not it would be unduly burdensome to require the Publication Review Committee to notify HRDC of its final decision, this Court does not have jurisdiction over the DOC or the Committee. Moreover, the Ninth Circuit has held that "[o]nly if the failure to provide notice was pursuant to prison policy does this constitute a due process violation actionable under § 1983." *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002).

At oral argument, Plaintiff conceded that this Court does not have jurisdiction over the Publication Review Committee.

**5. Whether Uttecht is individually liable.**

As discussed in issue number 1, above, Plaintiff has not shown that Uttecht is personally responsible for the delivery delays and temporary delay of a publication is not a First Amendment violation. No damages can be awarded against Uttecht.

//

//

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 10

**B. Qualified Immunity.**

Defendants raise the issue of qualified immunity for their actions. Plaintiff contends the Ninth Circuit *sub silentio* rejected qualified immunity and identified disputed material facts that "must be resolved at trial." ECF No. 106 at 14. Plaintiff is completely wrong. The Ninth Circuit indicated that the district court must assess the five issues identified above. It never indicated that these issues had to be resolved at trial and never rejected qualified immunity. The Ninth Circuit even said we "remand for the district court to assess [Uttecht's] individual liability and defenses." ECF No. 85 at 7.

Qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). In evaluating a state actor's assertion of qualified immunity, a court must determine: (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right. *See Saucier v. Katz,* 533 U.S. 194, 201-02 (2001) (*receded from in Pearson,* 555 U.S. 223 (holding that while *Saucier's* two step sequence for resolving government official's qualified immunity claims is

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 11

often appropriate, courts may exercise their sound discretion in deciding which of the two prongs should be addressed first)).  If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct.  *Glenn v. Washington Cty.,* 673 F.3d 864, 870 (9th Cir. 2011).

The second prong of the *Saucier* analysis must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).  "Only when an officer's conduct violates a clearly established constitutional right – when the officer should have known he was violating the Constitution – does he forfeit qualified immunity." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012).

Plaintiff must show both that it suffered a deprivation of a constitutional or statutory right, and that the right was clearly established at the time.  *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016).  Failing at either step negates Plaintiff's claim.  *Id*. at 1090.  The "key question is whether the defendants should have known that their specific actions were unconstitutional given the specific facts under review." *Id*. at 1090.  "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (internal quotations omitted).  Existing precedent must have "placed beyond debate the

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 12

unconstitutionality of" the officials' actions. *Id*. Plaintiff must prove that "precedent on the books" at the time the officials acted "would have made clear to [them] that [their actions] violated the Constitution." *Id*. at 827.

There is no case law that clearly establishes the unconstitutionality of the Department's prior policy that restricted the possession of paper copies of case law, nor is there case law that clearly establishes the same for the current restriction on information about other incarcerated individuals. Thus, in this Court's review of the merits of Plaintiff's claim for damages based on both policies, Defendants are entitled to qualified immunity from damages.

The same conclusion is reached by examining the policies in light of the standard under *Turner v. Safley*, as part of the first prong of qualified immunity. "[W]hen a prison regulation impinges on inmates' constitutional rights [to receive mail], the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). In the Supreme Court's view, "such a standard is necessary if "prison administrators . . . , and not the courts, [are] to make the difficult judgments concerning institutional operations." *Turner*, 482 U.S. at 89. In determining whether a prison regulation regarding incoming mail is reasonably related to a legitimate penological interest, the court considers the following factors: (1) whether there is a valid, rational connection between the regulation and

the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether any easy and obvious alternatives exist that fully accommodate the individual's rights at a *de minimis* cost.  *Turner*, 482 U.S. at 89-91; *Thornburgh*, 490 U.S. at 413-14.  To survive the summary judgment stage, the plaintiff must show that the regulation is not reasonably related to a legitimate penological interest. *Bahrampour v. Lampert*, 356 F.3d 969, 973 (9th Cir. 2004).  Prison officials do not need to demonstrate that the material in question actually caused problems in the past or is likely to cause problems in the future.  *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999).  Instead, the question is simply whether prison officials' "judgment was 'rational,' that is, whether the defendants might reasonably have thought that the policy would advance its interests." *Id.*; *see also Thornburgh*, 490 U.S. at 417 ("We agree that it is rational for the Bureau to exclude materials that, although not necessarily 'likely' to lead to violence, are determined by the warden to create an intolerable risk of disorder under the conditions of a particular prison at a particular time.").

     As discussed above in issue 2, DOC has legitimate penological reasons for restricting prisoner access to certain documents.  Moreover, incarcerated individuals were given the alternative means of accessing case law within the law

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 14

library.  The prisoners are not plaintiffs in this action, only HRDC is the Plaintiff.

On this record, Defendants are entitled to qualified immunity for their actions.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Renewed Motion for Summary Judgment, ECF No. 95, is **GRANTED**.

2. Plaintiff's Amended Motion for Summary Judgment and Permanent Injunction, ECF No. 97, is **DENIED**.

3. All pending motions are **DENIED as moot.**

4. All deadlines, hearings and trial are **VACATED**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED April 5, 2024.



THOMAS O. RICE
United States District Judge

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 15